In re The SEYCHELLES, PARTNER-
SHIP AND GENIUS CORPORATION

v.

BANYAN CORPORATION and
Robert Wheelock, III.

Nos. CA3–83–0332–F, CA3–83–0333–F.

United States District Court,
N.D. Texas,
Dallas Division.

April 19, 1983.

Robert C. Maley/Mark E. Browning, William M. Coats/James E. Armogida, Houston, Tex., for plaintiff.

D. Michael Lynn, Patrick McGowan, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

ROBERT W. PORTER, District Judge.

This action comes before this Court as two separate appeals from decisions set forth by the Honorable John Ford from the United States Bankruptcy Court of this District. Both parties to this action treated the separate appeals concurrently in their arguments before this Court. For ease of handling, this Court will also treat this matter concurrently.

*Facts*

The Seychelles is a general partnership composed of individuals and corporations. On November 23, 1982, two of the fourteen general partners commenced bankruptcy proceedings by the filing of an involuntary petition under Chapter 7 of the Bankruptcy Code ("Code"). No general partner objected to the petition and an Order for relief was entered on December 16, 1982.

On December 23, 1982, Genius Corporation, owner of 50.64% of the Debtor partnership and purporting to act as the managing partner of the Debtor filed a conversion of the case to Chapter 11 pursuant to 11 U.S.C. § 706(a). Prior to this filing, a Trustee was appointed who filed a proceeding to sell the principal asset of the Seychelles, approximately 130 acres of land, for approximately seven million dollars. Subsequently, motions were filed to prevent the selling of the land and to quash the purported conversion to Chapter 11. A hearing was held on January 14, 1983, at which time the Bankruptcy Court held that the conversion was not proper and quashed it, and further found that the relief sought by the Trustee should be granted and the 130 acres sold. A motion for rehearing was denied after oral argument on January 17, 1983, and an appeal of the issues was taken before this Court.

*Appeal I*

On January 7, 1983, the original petitioning partners in bankruptcy filed a motion to quash the conversion of the case by the Genius Corporation from a Chapter 7 to a Chapter 11 proceeding. The issue before the Court was whether the conversion could be accomplished without the joinder of all general partners of a partnership debtor pursuant to 11 U.S.C. § 706(a). The Bankruptcy Court held that joinder of all partners was necessary and quashed the attempted conversion. It is the opinion of this Court that the conclusions of the Bankruptcy Court are correct.

In simplified terms, section 706(a) allows the "debtor" to convert a case from Chapter 7 to Chapter 11 as a matter of right. "Debtor" is defined as a "person" under 11 U.S.C. § 101(12) which includes a partnership. The Code specifically provides that *commencement* of either a Chapter 7 or Chapter 11 proceeding may be voluntary through the consensus of all partners (section 301) or involuntary through the consensus of less than all partners (section 303). No provision in the Code, however, dictates the numerical consensus necessary for a *conversion* by a partnership.

Appellants are correct that former Bankruptcy Rules do not remain applicable when they conflict with the Code. 28 U.S.C. § 2075. Rule 11–8 of the old Federal Rules of Bankruptcy Procedure held that all partners must agree to either convert or to commence bankruptcy actions. This Rule, however, only partially conflicts with the new Code. Where partnership commencement formerly had to be voluntary, it may now be either voluntary or involuntary. The new Code controls. Partnership conversion, however, formerly had to be voluntary, but the Code does not conflict or change that prior rule. Therefore, the old Rule remains persuasive authority that conversions must still be voluntary and that all partners must agree.

The commentary in the *Collier Pamphlet Edition* to Rule 11–8 reads in part:

This rule is applicable to a case under Chapter 11 of the Code by or against a

partnership ... See ... § 303(b)(3) with respect to an involuntary Chapter 11 petition against a partnership for which Rule 11–8 is inapplicable.

In other words, Rule 11–8 which required all partners to agree to bankruptcy actions no longer applies to an involuntary commencement. The commentary is silent on whether a conversion has also been overruled. Indeed, if it was intended for conversions to also be overruled, the commentary would direct attention to § 706(a) in addition to § 303(b)(3). Such an oversight lends additional credibility to the holding that conversions under § 706(a) must be by consent of all partners.

This Court agrees that Appellants are not left without recourse under the Code. Conversion may still be accomplished through section 706(b). Appellants must move the Bankruptcy Court to convert this case to a Chapter 11 case, and after notice and hearing at which all the general partners could be heard, the Bankruptcy Court would decide the propriety of the conversion.

*Appeal II*

On or about December 21, 1982, Mr. Phillip I. Palmer, Jr., who had been appointed interim trustee in the Chapter 7 case, filed an Application for Order of Sale Free and Clear, and to Shorten and Limit Notice, in which the interim trustee proposed to sell the property of the partnership to Rosewood Corporation for the sum of $6,937,-149.00. At a hearing held January 11, 1983, the Bankruptcy Court approved the sale of the debtor's property to the Rosewood Corporation. A motion for rehearing was filed on behalf of the Seychelles. Following rehearing on January 17, 1983, the Bankruptcy Court again approved the sale and entered a Memorandum Opinion in support thereof.

Appellants have challenged the sale of the 130 acres which constitutes the Seychelles' primary asset. They argue that (1) the Bankruptcy Court's direction to sell the property even if the quashing of the conversion was in error was improper; and (2) the authorization of the Bankruptcy Court to sell the 130 acres was improper. This Court

having found that the quashing of conversion was proper, finds that appellant's first argument is without merit and should be dismissed. Appellant's second argument, however, demands closer attention.

■ The scope of review for an order from a Bankruptcy Court under the 1978 bankruptcy reform legislation continues to be a "clearly erroneous" standard. *In Re Bleaufontaine, Inc.,* 634 F.2d 1383 (5th Cir. 1981); 1 Collier on Bankruptcy ¶ 3.03(b) (15th Ed.1979). An appellate court may not reverse simply because on the same evidence it may have reached a different result. *In Re Multiponics, Inc.,* 622 F.2d 709, 723 (5th Cir.1980). In applying this standard this Court must review the basis upon which the bankruptcy judge based his final decision of approval. In reliance on the record before this Court, it appears that the facts as presented support the conclusions reached by the Bankruptcy Court.

■ The Bankruptcy Court had before it among other evidence testimony of three individuals: Robert Wheelock, David Robert Fransen and A.R. Toland. Each gentleman testified as to their opinion of the fair market value of the 130 acres of land in question. Wheelock and Fransen who were both familiar with the land and had experience with real estate sales in the area each felt that the present cash offer of $6,937,-149.00 represented the fair market value. Testimony showed that while the net cash price of the sale was $6,937,149.00, the actual value of the sale was estimated at about $7,250,000.00, when commissions and closing costs were taken into consideration. Toland thought that the value may be greater at about $7,500,000.00 to $8,000,000.00. Taking the high and low estimates into comparison, the low estimate being the cash offer of $6,937,149.00 and the high estimate of $8,000,000.00, the proposed sale is for a price equal to 86.7% of the fair market value. This amount is well within the former benchmark rule authorizing courts to approve sales of real property when such sales were within 75% of the appraised value. 11 U.S.C. § 110(f). It is obvious from the Memorandum Opinion of the Bankrupt-

cy Court that all of this evidence was taken into consideration when the Court held that $6,937,149.00 was a fair market value of the property.

▮ Appellants further attack the Bankruptcy Court's decision arguing that the Court did not take into consideration whether the sale was in the best interest of the debtor and creditors other than the lienholders. These accusations are unsubstantiated. In the Memorandum Opinion, the Bankruptcy Court found that waiting would not be in the best interest of the debtor. Presently, two promissory note obligations secured by deeds of trust are outstanding on the property, namely: one payable to the order of First National Bank of Amarillo in the principal amount of $4,000,-000.00 plus $500,000.00 interest, plus a second note assigned to the Republic Bank of Dallas in the principal amount of $2,375,-000.00 plus $125,000.00 interest. Each are fully matured and due and could be paid off along with administration costs if this sale was finalized. Presently, interest accrues on these notes at a rate of $2,500.00 per day. A short delay of only six months would amount to additional interest costs of $450,000.00. Testimony also establishes that significant efforts have been made to sell the 130 acres, and that no other offers have been made or are outstanding for sale of this land. The Bankruptcy Court held and this Court agrees that "delaying the present sale in anticipation of a better offer would be improvident." Interest costs would eat up any supposed equity left in the property. Therefore, the Bankruptcy Court's decision to approve the sale was not clearly erroneous.

It is ordered that the decisions reached by the U.S. Bankruptcy Court in Cause No. CA3–83–332–F and Cause No. CA3–83–0333–F are affirmed.